IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID S. SCOFIELD, | : |
| Plaintiff, | : |
| v. | : Case No. 2:20-cv-00648 |
| | : JUDGE ALGENON L. MARBLEY |
| | : Magistrate Judge Jolson |
| JUDYTH A. LEDOUX, Director of Industry Operations, Columbus Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court on Defendant Judyth A. LeDoux's Motion for Summary Judgment. (ECF No. 12). Plaintiff David S. Scofield filed a response in opposition. (ECF No. 20). For the reasons set forth below, this Court **GRANTS** Defendant's Motion for Summary Judgment.

### I. BACKGROUND

#### A. Factual Background

Plaintiff David S. Scofield operates Dave's World in Lancaster, Ohio. (ECF No. 1 ¶ 2). For years, he was a federally licensed firearms dealer and manufacturer, primarily selling firearms to law enforcement officers and qualified collectors. (*Id.*). His federal firearm license ("FFL") was first issued in May 2010 and subsequently renewed in June 2016. (ECF No. 14 at 72). He operated his business as a sole proprietorship and has two registered persons on his license. (ECF No. 1 ¶ 2). Individuals like Mr. Scofield are subject to the requirements of the Gun Control Act of 1968 (the "GCA"), codified as amended at 18 U.S.C. §§ 921–930. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is the regulatory agency tasked with enforcing federal firearms laws, including the GCA. Defendant Judyth LeDoux is the Director of Industry Operations

1

("DIO") for the Columbus field office of the ATF and oversees enforcement of the GCA as applied to licensed firearms dealers, including Mr. Scofield. Mr. Scofield's business is within the jurisdiction of the Columbus field office. (ECF No. 1 ¶ 3).

1. November 2016 Traffic Stop and Subsequent Legal Proceedings

After Mr. Scofield successfully renewed his FFL license in June 2016, he was the subject of a traffic stop in Pickerington, Ohio. (ECF No. 14 at 121). On November 4, 2016, a police officer observed a driver, later identified as Mr. Scofield, weaving in his lane. (*Id.*). When the officer took his license and proof of insurance to her vehicle, she relayed his information to dispatch. (*Id.* at 122). Dispatch reported back to her that he had two arrest warrants in Akron; the officer requested backup. (*Id.*). When backup arrived, both officers approached Mr. Scofield's car and asked him to step out of the vehicle to be placed under arrest on the outstanding warrants. (*Id.*). Mr. Scofield refused to cooperate, but eventually submitted to arrest without incident. (*Id.*). The officers called a tow truck to impound the vehicle and officers conducted an inventory search of the car, which turned up a loaded handgun under the front seat and a knife in a compartment beneath the steering wheel. (*Id.* at 74–75, 123). In the trunk, officers also found additional knives, an AR-15, and additional magazines and ammunitions. (*Id.* at 123).

On November 10, 2016, Plaintiff was indicted in the Court of Common Pleas of Fairfield County by a grand jury on two counts. He was charged with one count of improperly handling firearms in a motor vehicle, an F4 offense, under O.R.C. § 2923.16, which prohibits knowingly transporting or having a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle. (ECF No. 14 at 105). He was also charged with one count of unlawful possession of a dangerous ordinance, an F5 offense, under O.R.C. § 2923.17(A) and (D), which prohibit the knowing acquisition, possession, carrying,

or use of any dangerous ordinance without legal authorization. (*Id.*). Mr. Scofield was arraigned on November 21, 2016 and entered pleas of not guilty to both counts. (ECF No. 14 at 109).

On May 9, 2017, the Common Pleas Court overruled a motion to suppress filed by Mr. Scofield, in which he had argued that the police lacked probable cause to stop his vehicle and that the Pickerington Police Department violated its own impound policies and procedures in his case. (*Id.* at 75, 124). Mr. Scofield entered a plea of No Contest, was found guilty, and sentenced to five years of community control on January 29, 2018. (*Id.* at 75, 103–04, 109). The judgment against Mr. Scofield was filed on February 8, 2018. (*Id.* at 75).

On March 1, 2018, Mr. Scofield appealed the judgment overruling his motion to suppress and his sentence was stayed pending the appeal. (*Id.*). On February 1, 2019, the Fifth District Court of Appeals affirmed the judgment of the Common Pleas Court. (*Id.* at 130). The appeals court found that the vehicle search was lawful as the decision to impound the car and conduct an inventory search were both appropriate. (*Id.* at 125, 128–29). No appeal of that decision was filed within the 45-day window for appeal to the Ohio Supreme Court. (*Id.* at 75).

On June 14, 2019, Mr. Scofield filed a *pro se* notice of appeal and a motion for delayed appeal of a felony conviction in the Supreme Court of Ohio. (ECF No. 14 at 131–32). In his motion for delayed appeal, Mr. Scofield detailed his caretaking obligations, his inability to locate an attorney, time spent incarcerated, and his *pro se* status as reasons to grant his request for a delayed appeal. (ECF No. 14 at 133–36). On August 6, 2019, the Supreme Court of Ohio denied his motion for a delayed appeal. (ECF No. 14 at 154).

On August 16, 2019, he filed an emergency motion for a stay of execution of his February 1, 2019 judgment entry pending resolution of his appeal. (ECF No. 14 at 151–52). In this emergency motion, he argued that the stay was necessary to prevent further seizure or forfeiture

actions by the ATF. (*Id.* at 152). The same day, he filed a motion for reconsideration with the Supreme Court of Ohio, asking them to reconsider the August 6 denial of his motion for a delayed appeal. (ECF No. 14 at 155). His emergency motion to stay and his motion for reconsideration were both denied on October 15, 2019. (*Id.* at 161).

While he pursued relief *pro se* before the Supreme Court of Ohio, Mr. Scofield also pursued post-conviction relief in the Common Pleas Court with the aid of counsel. On March 21, 2019, Mr. Scofield filed his initial petition for post-conviction relief, alleging ineffective assistance of counsel. (ECF No. 14 at 164–65, 174). He subsequently sought leave to amend his petition on May 2, 2019 because his counsel learned of additional information favorable to his petition. (*Id.* at 174). On March 27, 2020, the State of Ohio filed a response in opposition to his petition for post-conviction relief. (*Id.* at 187–94). On May 14, 2020, the Common Pleas Court issued a decision denying Mr. Scofield's petition for post-conviction relief, without holding a hearing on the petition. (*Id.* at 17, 195–98). On June 15, 2020, Mr. Scofield appealed this denial to the Fifth District Court of Appeals. (*Id.* at 200–01, 206–07). Both sides filed briefs by November 2020. (*Id.* at 210). In March 2021, the Fifth District Court of Appeals found no abuse of discretion by the Common Pleas Court in denying his petition without a hearing. (ECF No. 17).

2.     2019 FFL Application and Denial

Amid these proceedings, Mr. Scofield's FFL was set to expire in June 2019. (ECF No. 14 at 72). Seeking to renew his FFL, Mr. Scofield filed a renewal application with the ATF on April 17, 2019. (*Id.*). On his application, Mr. Scofield indicated that he had been convicted of a felony for which he could be imprisoned for more than one year and that he was in the process of appealing this conviction. (*Id.* at 98). As required by the application, Mr. Scofield attached an explanatory statement concerning his pending appeal. (*Id.* at 99). In this statement, he disclosed

that he was convicted of a fourth-degree felony in Ohio. (*Id.*). Mr. Scofield further wrote that he was not guilty of the crime because he did not knowingly violate Ohio law. (*Id.*). He explained that, as of February 1, 2019, his appeal to the Fifth District Court of Ohio had failed but the matter was before the Ohio Supreme Court for consideration. (*Id.*). He also wrote that he was pursuing post-conviction relief in the Common Pleas Court of Fairfield County. (*Id.*). He concluded by noting that he planned to appeal to the Sixth Circuit Court of Appeals "and/or" the U.S. Supreme Court "if necessary, to assert [his] Innocence of this matter." (*Id.*). He concluded by informing the ATF that the two responsible persons on his FFL had no convictions and he wanted to keep his FFL active until his conviction was overturned. (*Id.*).

On May 1, 2019, the Chief of the Federal Firearms Licensing Center, a component of the ATF, sent a letter to Mr. Scofield that the criminal records check completed by the FBI and National Crime Information Center (NCIC) had returned information that indicated he was prohibited from possessing, shipping or transporting, and receiving firearms under the GCA, 18 U.S.C. § 922(g)(1). (*Id.* at 74, 101). This correspondence informed Mr. Scofield that unless additional information was received and validated by the ATF, such as information regarding restoration of firearm rights, pardon, or expungement, he would be prohibited from receiving an FFL and possessing firearms. (*Id.* at 101). The correspondence provided an address to send additional information and informed Mr. Scofield that if additional information was not returned within 30 days, his FFL application would be considered abandoned. (*Id.*).

On July 24, 2019, DIO LeDoux issued a notice to deny the application for license to Mr. Scofield, sending notice via certified mail. (*Id.* at 73). The notice informed Mr. Scofield that the application "may be denied because the applicant does not qualify under the provisions of 18 U.S.C. § 923(d)." (*Id.*). The notice informed Mr. Scofield of his appeal rights, including that Mr.

Scofield could continue to operate under his present license pending the outcome of any timely requested hearing. (*Id.*). On the subsequent pages, the notice detailed the specific reasons the application was denied. (*Id.* at 74–75). The notice discussed the 2016 traffic stop, Mr. Scofield's No Contest plea, conviction under ORC § 2923.16(B) & (I), and subsequent sentencing. (*Id.* at 74–75, 103–04, 109). The notice detailed Mr. Scofield's appeal of the May 9, 2017 judgment on his motion to suppress and the February 1, 2019 decision by the Fifth District Court of Appeals. (*Id.* at 75). The notice also mentioned that Mr. Scofield failed to appeal to the Ohio Supreme Court within the forty-five day deadline and "[a]s a result, [his] conviction stands and he is ineligible to be issued a Federal firearms license." (*Id.*).

### 3. ATF Hearing

On August 9, 2019, Mr. Scofield, through counsel, sent a request for hearing related to the notice to deny application for license to DIO LeDoux. (*Id.* at 78). In the request, Mr. Scofield indicated that he had "two active appeals pending," including a petition for post-conviction relief and an appeal to the Ohio Supreme Court. (*Id.* at 78–79). Mr. Scofield argued that, as a result, his current FFL had to be renewed in accordance with 18 U.S.C. § 925(a), which allowed for continued operations under an existing license during the term of an indictment and until "any conviction pursuant to the indictment becomes final." (*Id.* at 79). Mr. Scofield also objected to a May 15, 2019 search of his property by the ATF and challenged the timeliness of the ATF's notification of the denial of his renewal application. (*Id.*).

The ATF set a hearing for October 2, 2019, which was later rescheduled for October 22, 2019 at Mr. Scofield's request. (*Id.* at 81, 88). DIO LeDoux presided over the hearing. (*Id.* at 2, 8). Mr. Scofield was represented by counsel at the hearing. (*Id.* at 8). The hearing itself is informal in nature, such that the rules of evidence are not applicable, but an applicant may call witnesses

and a transcript is created. (*Id.* at 2). The hearing opened with counsel for the ATF presenting administrative documents related to Mr. Scofield's case. (*Id.* at 9–13). ATF's counsel then set forth the Government's position: that Mr. Scofield could not meet the criteria for licensing under the GCA because he had a felony conviction and was prohibited from possessing firearms as a result. (*Id.* at 13).

Mr. Scofield primarily challenged the constitutionality of his arrest during the ATF hearing, an issue he had also raised in his motion to suppress, direct appeal, and petition for post-conviction relief. (*Id.* at 14–16). He emphasized that his post-conviction relief petition was still pending and that he could still file a writ of certiorari with the U.S. Supreme Court. (*Id.* at 15, 17). Mr. Scofield testified on his own behalf during the ATF hearing. (*Id.* at 18). He testified about his business as a federal firearms licensed dealer, his applications for licensing, his pending appeals, the seizure of his firearms by the ATF, and the underlying traffic stop. (*Id.* at 18–38). He also testified about his previous attorneys, the criminal proceedings, and his direct appeal. (*Id.* at 38–41). Elena Larue, Mr. Scofield's romantic partner, also testified at the hearing about the traffic stop and Mr. Scofield's arrest. (*Id.* at 50–56). The hearing closed with Mr. Scofield's attorney stressing that Mr. Scofield's application for post-conviction relief was still pending and maintaining that he was actively pursuing his appeals. (*Id.* at 59).

4. Final Denial of FFL

The ATF issued a final notice of denial of Mr. Scofield's FFL license on December 10, 2019 pursuant to 18 U.S.C. § 923(d). (ECF No. 14 at 183). The final notice informed Mr. Scofield that he had sixty days to file a petition with the U.S. District Court if he was dissatisfied with the outcome of his hearing and final notice. (*Id.*). The final notice then set forth the ATF's findings, including that a petition for post-conviction relief is not an appeal. (*Id.* at 184–85). The ATF

7

concluded that, despite his various filings for relief, Mr. Scofield's conviction was final and he was prohibited from possessing firearms under 18 U.S.C. § 922(g)(1). (*Id.* at 185–86).

In May 2020, the United States Attorney's Office sent a letter to Mr. Scofield, informing him that he was the target of an ATF investigation regarding unlawful possession of firearms in violation of 18 U.S.C. § 922(g). (*Id.* at 199). The letter recommended that Mr. Scofield immediately retain an attorney and have the attorney contact the AUSA assigned to the case. (*Id.*).

### B. Procedural Background

After the final notice of denial of his FFL license renewal, Mr. Scofield filed a petition for judicial review before this Court pursuant to 18 U.S.C. § 923(f)(3). (ECF No. 1). DIO LeDoux filed an answer to the petition shortly thereafter, generally denying the allegations set forth in the petition. (ECF No. 7). On February 5, 2021, Defendant LeDoux filed a motion for summary judgment, along with the combined administrative record from the ATF proceedings. (ECF Nos. 12, 14). Mr. Scofield filed a response in opposition to the motion for summary judgment. (ECF No. 20). Defendant LeDoux filed a reply on May 3, 2021 (ECF No. 25), at which time this matter became ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could

9

reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

The Gun Control Act of 1968 provides for two stages of appeals for a federal firearms license applicant who disagrees with the resolution of his application. First, if an application is denied or a license is revoked, the aggrieved party may request a hearing to review that decision. 18 U.S.C. § 923(f)(2). If the applicant is unsuccessful at this hearing, the GCA also provides for judicial review in the federal courts. 18 U.S.C. § 923(f)(3). An aggrieved party has sixty days to file a petition in the U.S. District Court for the district in which he resides or has his principal place of business. *Id.* The district court will conduct a *de novo* review of the petition and may consider any evidence submitted by the parties, regardless of whether such evidence was considered at the earlier hearing. *Id.* When conducting *de* novo review, court must determine whether the ATF was authorized to deny the application. *See id.*; *see also MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 677 (N.D. W. Va. 2014) ("Furthermore, on petition for review, the narrow issue is whether the ATF was authorized to deny or revoke the FFL based on a single violation of the GCA."). If a court decides that the ATF's denial was not authorized, then the court shall order the agency to take such action as would be necessary to comply with the court's judgment. *Id.*

### III.    LAW & ANALYSIS

This Court is tasked under 18 U.S.C. § 923(f)(3) with determining whether Mr. Scofield was entitled to approval of his FFL application when he submitted his application to the ATF on April 17, 2019. After a *de novo* review of the matter, this Court finds that the ATF correctly resolved Mr. Scofield's application in the first instance: he was not qualified to receive a license as he was barred from possessing a firearm because of his felony conviction and thus his application was properly denied.

## A. Statutory Framework

When passing the Gun Control Act, "Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Lewis v. United States*, 445 U.S. 55, 63 (1980) (quoting *Scarborough v. United States*, 431 U.S. 563, 572 (1977)). It did so in part by regulating who could be involved in the business of importing, manufacturing, and dealing firearms under federal law. The GCA sets forth the requirements for applicants to receive and maintain an FFL in 18 U.S.C. § 923. This section instructs that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so." 18 U.S.C. § 923(a). Subsection (a) then sets forth the requisite fees, which vary depending on whether an applicant is a manufacturer, importer, or dealer. *Id.*

When an applicant files a proper application and pays the fee, the government must issue the appropriate license so long as the applicant is qualified. 18 U.S.C. § 923(c). Subsection (d) sets forth that an application by a manufacturer, importer, or dealer *shall* be approved if the following criteria are met:

(A) the applicant is twenty-one years of age or older;

(B) the applicant is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under 18 U.S.C. §§ 922 (g) and (n);

(C) the applicant has not willfully violated any of the provisions of the GCA or its implementing regulations;

(D) the applicant has not willfully failed to disclose any material information required or made any false statement as to any material fact in connection with his application;

(E) the applicant has premises from which he conducts business subject to the license or from which he intends to conduct such business within a reasonable period of time;

(F) the applicant certifies that the business complies with state and local law; and

(G) if the applicant seeks to be licensed as a dealer, the applicant certifies that secure gun storage or safety devices will be available at any place in which firearms are sold under the license to persons who are not licensees.

18 U.S.C. §§ 923 (d)(1)(A–G). Similar requirements are set forth in 27 C.F.R. § 478.47. The government must approve or deny the application within 60 days, beginning on the date it is received. 18 U.S.C. § 923(d)(2). If the government does not approve or deny the license within that window, an applicant may file an action to compel the Attorney General to act under 28 U.S.C. § 1361. *Id.* A valid license entitles the licensee to transport, ship, and receive firearms and ammunition in interstate or foreign commerce until the license expires. 18 U.S.C. § 923(c).

Subsection (e) sets forth the due process requirements for a revocation of any license issued under the section. 18 U.S.C. § 923(e). Subsection (f) requires that any person whose application is denied or whose license is revoked must receive a written notice, specifically stating the grounds upon which the decision was made. 18 U.S.C. § 923(f)(1). Where a license is being revoked, this notice must be issued prior to the effective date of the revocation. *Id.* This subsection also sets forth the appeal processes detailed previously. Subsection (f) also deals with the impact of an acquittal on a licensee's future applications and licensing processes. 18 U.S.C. § 923(f)(4).

Additionally, 18 U.S.C. § 925(b) directs that a licensed dealer who is indicted for a crime punishable by imprisonment for a term exceeding one year may continue to operate under an existing license during the term of the indictment and until any conviction pursuant to the indictment becomes final. A person who is otherwise prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may apply to the Attorney General for relief

from the disabilities imposed by federal laws under 18 U.S.C. § 925(c); if such relief is denied by the Attorney General, the person may file a petition in federal court for review of such denial.

### B. Necessity of *De Novo* Hearing

Mr. Scofield has requested a hearing on his petition under 18 U.S.C. § 923(f)(3), which Defendant LeDoux argues would serve "no purpose." The GCA's judicial review provision instructs that a court "may consider any evidence submitted by the parties." 18 U.S.C. § 923(f)(3). A court is not required to hold an evidentiary hearing whenever one is requested; rather, it remains within a court's discretion to determine if a hearing is necessary. *See DiMartino v. Buckley*, 19 F. App'x 114, 115 (4th Cir. 2001) (citing *Perri v. Dep't of Treasury*, 637 F.2d 1332, 1335 (9th Cir. 1981)) (finding no abuse of discretion where district court declined to hold an evidentiary hearing); *see also Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980) (finding that the legislative history of 18 U.S.C. § 923(f)(3) does not require a district court to hold a hearing and receive evidence in every case, but rather affords to the district court discretion). A good reason to hold an evidentiary hearing should either appear in the administrative record or be presented by the party who petitions for judicial review. *See Blumenthal*, 649 F.2d at 466. Where no such reason is presented, considerations of judicial economy "suggest that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact." *Id.*

In his petition, Mr. Scofield does not provide any reason supporting his request to hold an evidentiary hearing. (ECF No. 1 at 1). In his response to Defendant's motion for summary judgment, he concedes that there is no absolute right to an evidentiary hearing when appealing an adverse ATF licensing decision. (ECF No. 20 at 5). Rather, he emphasizes that the trial court should allow the parties an opportunity to present additional evidence. (*Id.* at 6). Mr. Scofield then filed an affidavit with his own testimony in support of his brief. (*Id.* at 7; ECF No. 20-1). Later in

his response, he contends that he is entitled to an evidentiary hearing because the issue for this Court to determine is one of willfulness. (ECF No. 20 at 14). The Plaintiff argues that there is a genuine issue of material fact as to whether he willfully violated the GCA, as he has maintained his innocence as to the underlying felony charges. (*Id.* at 15).[1] In reply, Defendant LeDoux maintains that no evidentiary hearing is required and this Court may enter judgment solely based on a review of the administrative record. (ECF No. 25 at 3).

This Court finds as a preliminary matter that no evidentiary hearing is necessary. Mr. Scofield has not set forth any reasons, either in his petition or response to summary judgment, that suggests that this Court would need to hold a hearing to receive any essential evidence. The Government has filed the entire certified administrative record of the case, the validity of which Mr. Scofield does not dispute. Mr. Scofield has also filed an affidavit with his response to the motion for summary judgment. The administrative record itself does not indicate that a hearing would be necessary. Under *de novo* review, a court may give the government's determination "as much weight as the court deems appropriate." *Moreno*, 113 F. Supp. 3d at 921 (quoting *Arwady Hand Truck Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007); *see also Blumenthal*, 649 F.2d at 467 (noting that district court may accord weight to agency's findings "as it believes they deserve" in light of the administrative record and any additional evidence). Given the abundant administrative record in this case, this Court declines to exercise its discretion to hold a hearing in the interests of judicial economy.

---

[1] Whether Mr. Scofield willfully violated the GCA is not at issue because the ATF denied his application under 18 U.S.C. § 923(d)(1)(B) because he is subject to a federal firearms disability, not under 18 U.S.C. § 923(d)(1)(C), which concerns willful violations of the GCA.

### C. Scofield's Eligibility to Receive an FFL

This Court must determine whether the ATF was compelled to approve Mr. Scofield's application in accordance with the provisions of the GCA. When a qualified applicant files a proper application, pays the fee, and satisfies all statutory criteria, the ATF does not have discretion to deny an FFL application. Defendant LeDoux submits that there is no dispute of any material facts and that this Court may determine as a matter of law that she acted reasonably in finding Mr. Scofield was not eligible for licensing under 18 U.S.C. § 923(d)(1)(B) or 27 C.F.R. § 478.47(b)(2) because he was barred by 18 U.S.C. § 922(g)(1) from possessing, shipping, transporting, or receiving firearms. Plaintiff Scofield disputes that summary judgment may be granted because he had a pending petition for post-conviction relief at the time he submitted his application and he had not willfully violated the GCA. Whether Mr. Scofield willfully violated the GCA, however, is not at issue because the ATF denied his application under 18 U.S.C. § 923(d)(1)(B), which concerns federal firearms disabilities, not under 18 U.S.C. § 923(d)(1)(C), which concerns willful violations of the GCA.

The core issue confronting this Court is whether, at the time of Mr. Scofield's renewal application, he was qualified to be granted an FFL under 18 U.S.C. § 923. To be granted a license, the GCA requires that an applicant submit an application, pay a fee, and meet certain statutory criteria set forth in § 923(d)(1). The GCA contains several provisions that address the relationship between an individual's criminal record and his ability to possess, transport, ship, or receive firearms. Section 922(g) makes it unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign

commerce." 18 U.S.C. § 922(g)(1). An FFL shall be approved if the applicant is not prohibited under Section 922(g) from transporting, shipping, or receiving firearms, amongst other criteria. 18 U.S.C. § 923(d)(1)(B). Section 925(b) provides that a licensed individual may continue operations under an FFL until a conviction for an offense which is punishable for more than one year becomes final. 18 U.S.C. § 925(b).

The Federal Firearms License (FFL) Renewal Application asks applicants the following questions concerning their criminal record:

> 10. Have you ever been convicted in any court of a felony or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation?
>
> 11. Are you presently appealing a conviction of a crime punishment by imprisonment for a term exceeding one year?

(ECF No. 14 at 98). On his April 17, 2019 application, Mr. Scofield filed the application to renew his FFL and checked "YES" in response to questions 10 and 11. (*Id.*). In an attached explanatory statement, Mr. Scofield informed the ATF that he had been convicted of a fourth-degree felony in Ohio, that he considered himself innocent because he did not knowingly violate Ohio law, and that he was pursuing appeals through the Ohio Supreme Court and through a petition for post-conviction relief. (*Id.* at 99). He concluded by requesting that the ATF keep his FFL active until his conviction was overturned. (*Id.*). The ATF denied his application because he was prohibited from transporting, shipping, or receiving firearms or ammunition under 18 U.S.C. §§ 922(g) and (n), making him ineligible under 18 U.S.C. § 923(d)(1)(B). (ECF No. 14 at 73).

The Plaintiff contests this denial of his license because he was in the processing of seeking post-conviction relief and review by the Ohio Supreme Court when he submitted his application, such that any conviction was not final. (ECF No. 1 at 3–5). Defendant LeDoux, in turn, argues that the Plaintiff now improperly seeks to use his petition in federal court to attack the validity of his

16

underlying felony conviction, which was final at the time of his renewal application. (ECF No. 12 at 11, 13; ECF No. 25 at 3). LeDoux maintains that denial of the license renewal was proper because his conviction was final and he was subject to the firearm disabilities of 18 U.S.C. § 922(g). (ECF No. 12 at 11). None of the facts surrounding the timing of Mr. Scofield's various filings related to his criminal proceeding is in dispute.

In its Definitions section, the GCA advises that what constitutes a conviction of a crime punishable by imprisonment for a term exceeding one year "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). This provision continues to explain that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction," unless the pardon, expungement, or restoration of civil rights expressly places a continued firearms disability on the individual. *Id.* Because Mr. Scofield was subject to criminal proceedings in the Fairfield County Common Pleas Court, this Court must look to Ohio law to determine what constitutes a conviction.

In Ohio, a conviction becomes final "when all appellate remedies have been exhausted" or, more specifically, when the time for perfecting a direct appeal from a conviction expires. *State v. Bishop*, 7 N.E.3d 605, 608 (Ohio Ct. App. 2014) (*per curiam*) (citing *Teague v. Lane*, 489 U.S. 288, 295 (1989) and *Agee v. Russell*, 751 N.E.2d 1043 (Ohio 2001)). The time for a petition of certiorari must also have elapsed for a conviction to be final. *Agee*, 751 N.E.2d at 1047 (citing *Teague*, 489 U.S. at 295); *see also Gonzalez v. Thaler*, 564 U.S. 134, 150 (2012) (judgment becomes final when time for seeking direct review with United States Supreme Court expires). On January 29, 2018, Mr. Scofield entered his plea of No Contest to the charge of Improper Handling of a Firearm in a Motor Vehicle and was found guilty. (ECF No. 14 at 103–12). The sentence was

17

stayed after he timely filed an appeal to the Fifth District Court of Appeals on March 1, 2018. (*Id.* at 113–19). On February 1, 2019, the Fifth District Court of Appeals affirmed the trial court's decision denying the motion to suppress. (*Id.* at 120–30).

There is no appeal as of right from the court of appeals in felony cases. *See* Ohio S. Ct. R. Practice, Introduction at 1 (2021). Instead, appeals involving a felony are jurisdictional appeals, which are accepted at the Court's discretion. *See* Ohio S. Ct. R. Practice 5.02(A)(2) (defining jurisdictional appeals); Ohio S. Ct. R. Practice 7.08(B)(4)(d) (indicating that Supreme Court can decline to hear jurisdictional appeal in felony case). In a jurisdictional appeal, a notice of appeal must be filed within 45 days of the date that the court of appeals filed its judgment entry with its clerk Ohio S. Ct. R. Practice 7.01(A)(1)(i). In the habeas context, convictions are considered final forty-five days after the appellate court decision is issued, when the time to file a timely appeal with the Supreme Court of Ohio has expired. *See, e.g.*, *Mix v. Warden, Ohio Reformatory for Women*, No. 2:21-CV-126, 2021 WL 977875, at *3 (S.D. Ohio Mar. 16, 2021). The deadline for Mr. Scofield to file a timely appeal to the Supreme Court of Ohio was March 18, 2019.

The Supreme Court of Ohio also allows the filing of delayed appeals after the 45-day window expires in felony cases where the defendant has been convicted of a crime. Ohio S. Ct. R. Practice 7.01(A)(4)(a). Before seeking habeas relief, an incarcerated person in Ohio must exhaust all direct and delayed appeals to the Ohio Court of Appeals and the Supreme Court of Ohio. *See, e.g.*, *Bodie v. Jenkins*, 2015 WL 4874705, at *3 (S.D. Ohio Aug. 14, 2015) (citing *Mackey v. Koloski*, 413 F.2d 1019 (6th Cir. 1969)). The availability of the delayed appeal in Ohio, however, does not alter when a conviction is considered final; it only affects a district court's consideration of whether remedies have been considered exhausted for habeas purposes.

Mr. Scofield did not file a jurisdictional appeal with the Supreme Court of Ohio by March 18, 2019, and so his conviction became final on that date—three weeks before he filed his FFL renewal.[2] Mr. Scofield's filing of the motion for delayed appeal on June 14, 2019 did not alter the status of his conviction: it became final when he missed the deadline to file his writ of certiorari to the Supreme Court of Ohio and remained that way. Mr. Scofield's own filing of an emergency motion for stay of the execution of his sentence pending appeal with the Supreme Court of Ohio only underscores the finality of the conviction. If the conviction had not become final and the sentence was not being imposed by the fact of his pursuing an appeal, he would not need to seek relief from that conviction and attendant sentence.

Mr. Scofield's filing of a petition for post-conviction relief also does not impact the finality of his conviction. Under Ohio law, an individual who has been convicted of a criminal offense and claims a denial or infringement of his rights may file a petition for post-conviction relief asking the court to vacate or set aside the judgment or sentence, or grant other appropriate relief. O.R.C. § 2953.21(A)(1)(a)(i). A post-conviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on the criminal judgment. *State v. Ketterer*, 92 N.E.3d 21, 25 (Ohio Ct. App. 2017) (citing *State v. Steffen*, 639 N.E.2d 67 (Ohio 1994)). Individuals sentenced to incarceration with pending post-conviction petitions for relief, no matter how valid, must be

---

[2] Under *Gonzalez v. Thaler*, a judgment in a criminal case becomes final when the time for seeking direct review with U.S. Supreme Court expires. 564 U.S. 134, 150 (2012). Final judgments from state courts may be reviewed by the U.S. Supreme Court by writ of certiorari, but only when the final judgment is rendered by the highest court of the state in which a decision could be had. 28 U.S.C. § 1257(a). The decision of a lower court may be considered the decision of the highest court for purposes of seeking a writ of certiorari when a higher state court can decline to review questions presented and does decline to do so in a certain case. *United States ex rel. Carrono v. Richmond*, 177 F. Supp. 504, 507 (D. Conn. 1959) (citing *Mich.-Wisc. Pipe Line Co. v. Calvert*, 347 U.S. 157 (1954)). This may also be the case when a higher court is divested of the power to review the decision of a lower court. *See, e.g.*, *Richmond*, 177 F. Supp. at 507 (discussing *Betts v. Brady*, 316 U.S. 455 (1942)). Where an individual fails to perfect their direct appeal by filing timely a writ of certiorari, where available, the decision of the intermediate appellate court stands as final and a writ of certiorari is no longer available under 28 U.S.C. § 1257(a) because final judgment was not rendered in the highest court in which a decision could be had. This is the circumstance in which Mr. Scofield finds himself.

confined pursuant to the final judgment they seek relief from and cannot be released on bail. *See State v. Lambrecht*, 544 N.E.2d 702, 703 (Ohio Ct. App. 1989). Mr. Scofield filed a petition for post-conviction relief, alleging deprivation of his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution, as well as under the Ohio Constitution. (ECF No. 14 at 163). In his petition and amended petition, Mr. Scofield sought an order vacating his conviction. (*Id.* at 166, 172). While that petition was pending, Mr. Scofield was subject to the sentence of community control imposed in his case and made final on March 18, 2019.

When Mr. Scofield submitted his FFL application on April 17, 2019, he had been convicted of an offense punishable by more than one year and was not pursuing any appeals at that time. His petition for post-conviction relief was not an appeal under law. The deadline had elapsed for filing a writ of certiorari with the Supreme Court of Ohio; the mere possibility that Mr. Scofield could file a motion for a delayed appeal does not alter that his conviction became final. As such, he was subject to the firearm disabilities of 18 U.S.C. § 922(g) and thus he was ineligible to receive an FFL under 18 U.S.C. § 923(d)(1)(B). *See also* 27 C.F.R. § 478.71 (when Director has reason to believe that an applicant is not qualified to receive a license, he may issue a notice of denial to the applicant). The ATF's denial of Mr. Scofield's FFL renewal application was not improper.

## IV.  CONCLUSION

For the reasons discussed above, Defendant LeDoux's Motion for Summary Judgment (ECF No. 12) is **GRANTED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                     _____
                                     **ALGENON L. MARBLEY**
                                     **UNITED STATES DISTRICT JUDGE**

**DATED:  July 6, 2021**